Gibbons *v.* Ogden.

THOMAS GIBBONS *against* AARON OGDEN.

1. Where an action is brought upon a public statute, it is not necessary to aver in the declaration, that the cause of action accrued after the passing of the statute. Thus upon the act of 25th February, 1820, it is sufficient if the enjoining is *laid* to be after the act went into operation, without specially averring that it was so.

2. An action upon the third section of the act 25th February, 1820, (*Rev. Laws* 689,) " for restraining the plaintiff from navigating the waters between the ancient shores of New York and New Jersey," is not a local, but a transitory action.

3. In an action upon this statute, it is sufficient to aver, that the restraint complained of " was on the waters of the bay of New York," which said waters lie between the ancient shores of New Jersey and New York, without setting forth any act done in either of the said States in particular. If it is material to the defendant to bring up this matter, he ought to do so by pleading.

4. If the declaration avers, that the restraining and enjoining was on the waters of the bay of New York, and that the said waters lie between the ancient shores of New York and New Jersey, and the fact should be, that the waters of the bay of New York are no part of the waters lying between the ancient shores of these States, yet this is a matter of fact to be tried by the jury, and cannot be determined by the court upon demurrer.

5. In an action upon the statute of 25th February, 1820, section third, for restraining plaintiff by virtue, or under color, of any laws of New York, it is not necessary to set out those laws specifically, because they are mere matters of inducement.

6. Though this court is of opinion, that the statute upon which this action is founded is unconstitutional, so far as it makes a person liable for transactions done in the State of New York, under the *lex fori* of that State, yet

inasmuch as a court of co-ordinate jurisdiction has so far adjudged this law constitutional as to carry it into effect, and inasmuch as it is of importance that the administration of justice should be uniform in this State, this court is induced to yield its own opinion, and to say, that the demurrer should be overruled.

This was an action of trespass on the case, brought by Thomas Gibbons against Aaron Ogden, upon the statute of the 25th of February, 1820, (*Rev. Laws* 689) to recover damages because the said Thomas Gibbons had been restrained and enjoined from navigating, with his steamboat the waters between the ancient shores of New York and New Jersey, by an injunction issued out of the Court of Chancery of the state of New York, in a suit wherein the said Aaron Ogden was complainant, and Thomas Gibbons defendant. The first count in the declaration was as follows: "Thomas Gibbons complains of Aaron Ogden for, that heretofore, *to wit*, on the twenty-first day of October, in the year of our Lord one thousand eight hundred and eighteen, at a Court of Chancery holden for the state of New York, at the city of Albany, *to wit*, at Newark, in the said county of Essex, a certain rule and order,* by the said Court of Chancery, in a suit wherein the said Aaron Ogden was complainant, and the said Thomas Gibbons was defendant, was made at the instance of the said Aaron Ogden, whereby it was then and there ordered, that a writ or writs of injunction issue out of and under the seal of the said court, to be directed to the said Thomas Gibbons, and to all and every his confederates, agents, captains, pilots, engineers, mariners and servants, commanding them and every of them, under a certain penalty to be therein expressed, absolutely to desist from using, employing and navigating the two steamboats in the said bill of the said Aaron Ogden particularly mentioned, the one named the Stoudinger, but usally called the Mouse, the other named

---

* See the cases reported, in which the orders mentioned in the declaration were made. 4 *John. Chan. Rep.* 150, 174.

the Bellona, or either of them, or any other steamboat or
steamboats purchased or built by the said Thomas Gibbons,
on the waters of the state of New York lying between
Elizabethtown, in the state of New Jersey; or any place
within the township of Elizabethtown aforesaid and the city
of New York, which said waters comprise, in part, the bay
of New York, and lie between the ancient shores of the
state of New York and the state of New Jersey, until the
said Thomas Gibbons should have fully answered the bill
of the said Aaron Ogden, and until the further order of
the said court in the premises. And the said Thomas
avers, that the said order was then and there made by the
said Court of Chancery of the state of New York, by virtue
of divers acts of the legislature of the said state of New
York, *to wit*, an act entitled " An act repealing an act enti-
tled an act for granting and securing to John Fitch the sole
right and advantage of making and employing the steam-
boat by him lately invented, and for other purposes ;" an
act entitled, " An act relative to a steamboat ;" an act
entitled, " An act to revive an act entitled an act relative to
a steamboat ;" an act entitled, " An act for the further
encouragement of steamboats on the waters of this state,
and for other purposes ;" an act entitled, " An act for the
more effectual enforcement of the provisions contained in an
act entitled an act for the further encouragement of steam-
boats on the waters of this state, and for other purposes,"
which said acts are mentioned and referred to in the bill of
complaint exhibited by the said Aaron Ogden, as complain-
ant in the said suit in chancery. And the said Thomas
further saith, that he, the said Thomas, on the said twenty-
first day of October, in the year eighteen hundred and
eighteen, and for a long time before, and from thence hith-
erto continually has been, and still is, a citizen of the state
of New Jersey, *to wit*, at Newark, aforesaid, and that during
all the time aforesaid he, the said Thomas, had been, and
still is, the sole owner of a certain steamboat, called the

Bellona, mentioned in said order, and moving with steam and fire, to wit, at Newark aforesaid; and that the said steamboat during all the time aforesaid, continually has been, and still is, a vessel above twenty tons burthen, duly enrolled at the port of Perth Amboy, in the state of New Jersey, in manner and form in such case required by the laws of the United States, and duly licensed to be employed in carrying on the coasting trade, according to the laws of the United States, in such case made and provided, to wit, at Newark aforesaid. And the said Thomas further saith, that afterwards, to wit, on the twenty-fourth day of October, in the year eighteen hundred and eighteen, the said Aaron Ogden, pursuant to, and under, and by virtue of, the said acts of the legislature of the state of New York, to wit, at Newark aforesaid, caused and procured to be sued and prosecuted out of the said Court of Chancery of the state of New York, a certain writ of injunction under the seal of the said court, and bearing date on the said twenty-fourth day of October, in the year eighteen hundred and eighteen, directed to the said Thomas Gibbons and his confederates, captains, pilots, engineers, mariners, servants, counsellors, attorneys, solicitors, and agents, and each and every of them, by which said writ the said Thomas Gibbons and his confederates, captains, pilots, engineers, mariners, servants, counsellors, attorneys, solicitors, and agents, and each and every of them, under the penalty of ten thousand dollars, to be levied on their and every of their lands, goods, and chattels, were enjoined and commanded absolutely to desist and refrain from using, employing, and navigating the two steamboats in the bill of the said Aaron Ogden particularly mentioned, the one named the Stoudinger, but usually called the Mouse, and the other named the Bellona, or either of them, or any other steamboat purchased or built by the said Thomas Gibbons, on the waters, of the state of New York, lying between Elizabethtown, in the state of New Jersey, and any place within the township.

of Elizabethtown aforesaid and the city of New York, until
the said Thomas Gibbons should have fully answered the
bill of the said Aaron Ogden, and until the further order of
the said Court of Chancery to the contrary.   And the said
Thomas further saith,- that afterwards, *to wit*, on the sixth
day of October, in the year eighteen hundred and nineteen,
at the said Court of Chancery, holden for the said state of
New York, at the city of Albany, *to wit*, at Newark afore-
said, a certain other rule and order by the said court in the
said suit was made, whereby it was then and there further
ordered, that the said injunction, which had theretofore
issued in said cause, should be confined in its operation to
the whole of the waters in the bay of New York, on the
passage or route between the city of New York and Eliza-
bethtown Point, or Elizabethtown, or any part thereof, and
that it should be understood not to apply to the waters of
the Sound that lie between Staten Island and the state of
New Jersey, so long as the boat or boats of the said Thomas
Gibbons, the defendant, should not enter the bay of New
York.   And the said Thomas further saith, that afterwards,
and on the second day of April, in the year eigthteen hun-
dred and twenty, and from thence continually, until the time
of commencing this suit, and during all the intervening time
between the said second day of April, in the year eighteen
hundred and twenty, and the said time of commencing this
suit, *to wit*, at Newark aforesaid, the said Aaron Ogden,
under and by virtue of the said orders and the said writ of
injunction, sued out and prosecuted by virtue of the said acts
of the legislature of the state of New York, in the said suit
in the Court of Chancery of the state of New York, wherein
he, the said Aaron Ogden, was complainant, caused the said
Thomas Gibbons to be restrained and enjoined from navigat-
ing, with his said steamboat, the Bellona, moved with steam
and fire as aforesaid, the waters of the bay of New York,
on the passage or route between the city of New York
and Elizabethtown Point, or Elizabethtown, or any part

thereof, which said waters lie between the ancient shores of the state of New York and the state of New Jersey, contrary to the form of the act of the legislature of the state of New Jersey, in such case made and provided, and thereby he, the said Aaron Ogden, hindered and prevented the said Thomas Gibbons from navigating with his said steamboat, the Bellona, the said waters in the bay of New York, on the passage or route between the city of New York and Elizabethtown Point, or Elizabethtown, or any part thereof, which said waters lie between the ancient shores of the state of New Jersey and the state of New York, during all the time aforesaid. And the said Thomas further saith, that before the said second day of April, in the year eighteen hundred and twenty, *to wit*, on the twentieth day of October, in the year eighteen hundred and eighteen, at Newark aforesaid, he, the said Thomas, at great expense, procured agents, laborers, mariners and servants, to navigate and run his said steamboat, the Bellona, from and to a place in the township of Elizabethtown aforesaid, in the state of New Jersey, called Halsted's Point, to and from the port of the city of New York, in the state of New York, through and over the waters on the bay of New York, on the passage or route between the city of New York and Elizabethtown aforesaid, lying between the ancient shores of the state of New Jersey and the state of New York, as aforesaid, in running and navigating to and from the said ports or places respectively, for the carrying and transportation of freight and passengers, and then and there had fitted out and equipped his said steamboat with all necessary engines, tackle, apparel and furniture, for plying and running between, and to, and from, the said ports or places respectively, and through and over the waters on the bay of New York, and on the passage or route aforesaid, and lying between the ancient shores of the state of New Jersey and the state of New York, as aforesaid, and during all the time aforesaid, between the said second day of April, in the year

eighteen hundred and twenty, and the said time of commencing this suit, he, the said Thomas, kept and retained the said agents, laborers, mariners and servants, for the purpose aforesaid, and kept and continued his said steamboat, fitted out and equipped as aforesaid, and for the purpose aforesaid, *to wit,* at Newark aforesaid, and by means of the restraining and enjoining aforesaid, by the said Aaron Ogden, during the time aforesaid, of the said Thomas from navigating, with his said steamboat, the waters above mentioned, he, the said Thomas, during all that time, lost and was deprived of the use of his said steamboat, and thereby the said steamboat became greatly spoiled and lessened in value, and the said Thomas was put and subjected to great damages, expenses and charges in paying off the said agents, laborers, mariners and servants, for their hire and wages which accrued during all the time aforesaid, between the said second day of April, in the year eighteen hundred and twenty, and the said time of commencing this suit, and in repairing the said steamboat, her engine, tackle, apparel and furniture, during the time aforesaid, amounting, in the whole, to a large sum of money, *to wit,* the sum of five thousand dollars, *to wit,* at Newark aforesaid.

The second count in the declaration was precisely the same as the first, only it averred the order of the Court of Chancery for an injunction, issued "under *color of* divers acts of the legislature of New York," instead of by "*virtue of* several acts of the legislature of New York."

To this declaration, the defendant demurred specially, and assigned for cause a variety of reasons, which are fully stated in the argument of the opening counsel.

*Ogden,* in support of demurrer, said—I. Cause of demurrer. This action is founded on a recent statute, and it is not averred in the declaration, that the cause of action arose since its passage. In a recent statute, there must be

an averment, that the cause of action arose since its passage. 1 *Saund.* 309, *a. note* 5. This is always necessary when time is material and traversable, as it is here.

II. The cause of action, if any, is *local*, and not *transitory*, and the venue ought to have been laid in the county of Bergen, where it arose, and so, not in the county of Essex; or if it happened out of the state, with such an averment, with a *videlicet*, &c., of a county in this state. The restraints in the declaration are laid to be in the bay of New York, between the ancient shores of the two states, and so the court are bound to say, that they were imposed, partly in the county of Bergen, and partly in the state of New York.

1. Where the place is *material* or *traversable*, the action is local, and the venue must be laid accordingly. 1 *Chit.* 384. Now, in this case, the place is absolutely material, for if the restraint had been in any county on the Delaware, it could not have been obnoxious to this law; the restraint must have been between the ancient shores of New York and New Jersey. *Comyngs Dig. Action N.* 4, 5.

2. Again—if the cause of action could have arisen in one particular county *only*, *it is local*, and the venue must be laid there. 1 *Chit.* 270, 271, *No.* 51. Now this cause of action must have arisen in the county of Bergen, which alone comprehends waters lying between the *ancient* shores of the two states, within the bay of New York. *Bloom. N. J. Laws*, 177.

3. If the cause of action happened abroad, the description must be set out *truly*, and then the venue must be given for the sake of the trial, with a *videlicet*, &c. 1 *Chit.* 270, *No.* 50; *Ib.* 281.

4. Local matters, arising out of the realm, ought not, generally, to be tried any where but where they arise, although it be otherwise in matters *ex contracto*, and sometimes *ex delicto*. 1 *Chit.* 269, *No.* 48; 4 *Term. Rep.* 503.

5. If a local description, or venue, be omitted, where necessary, it is matter of demurrer. 1 *Saund.* 74; *Cowp.* 170; 1 *Chit.* 285.

III. Cause of demurrer. Declaration under the same venue, charges, as trespasses, acts done between the ancient shores of the two states, without any special averment of any such acts, as done within the territory and jurisdiction of New York, or within the territory and jurisdiction of New Jersey, whereby defendant is prevented from making a proper defence by justifying, in the one case, and pleading *not guilty* in the other case.

The whole question, in regard to the *third* cause of demurrer, arises under this *fourth venue,* in the first count, and the *fifth venue,* in the second count, which are precisely similar.

From the charges comprised within these two venues, alone, is it, that there is any *restraint* laid in this declaration, and, from a recurrence to them, the *gravamen* appears to be, that plaintiff is restrained from navigating the *bay* of New York, *or* any part thereof (without any averment of any restraint in *either state*) and within same *venue.*

This court is bound to take notice, that the waters which lie in the bay of New York, on the westerly side of the midway line, are within the territory and jurisdiction of this state. *Bloom. N. J. L.* 177. And that the waters on the easterly side of that line, on the route or passage aforesaid, are in the territory and jurisdiction of New York; and, consequently, that there is contained in the said venue, two distinct traversable facts, one, as to a restraint in the territory and jurisdiction of New York, and the other, as to a restraint within the territory and jurisdiction of New Jersey, which naturally require distinct defences, and are wholly different as to their consequences, that is to say, as to the restraint in New Jersey, this defendant must necessarily plead *not guilty,* but as to the restraint in New York, defendant may justify under the decree of the court, or

plead specially, that the cause of action was local, and arose out of the jurisdiction of the court, or in many other ways, and so keep the different questions, as to each territory, entirely distinct; but plaintiff has herein, for his own purposes, departed from a form of pleading, to the benefit of which this defendant was entitled; for he is not bound to plead matter which plaintiff ought to shew. There should be a *distinct venue*, distinctly laid, for every *material* and *traversable* fact. 1 *Chit.* 281, *No.* 37.

IV. Cause of demurrer. For that the plaintiff has not shewn sufficient matter in his declaration to entitle him, under the statute of New Jersey, to bring the present suit. The statute requires, that the writ of injunction, or order, of the Court of Chancery of New York, by which the plaintiff was restrained, should be in virtue of *some act of the legislature of that state;* (*Rev. Laws* 689, *sec.* 3) that such restraint should be co-extensive with the waters between the two states; and that this defendant should have been plaintiff in such writ or order.

I. As to the statutes of New York. 1. The act of 9th April, 1811, of New York, provides, that in case of an action for forfeiture, the court should, by writ of injunction, retain the property within the jurisdiction of the court, *pendente lite.* The above statute is referred to in the declaration, but there is none other which makes any provision whatever for any injunction.

2. The other statutes *merely* grant the exclusive right over all the waters within the *territory* of New York, and add the *statutory* sanction of forfeiture, as in the Jersey law to John Fitch, in 1786, but does not aver, that such acts claim such territory to be co-extensive with the waters between the ancient shores, &c., and no actual restraint is averred on the west side.

The injunction, therefore, was neither *prayed* for, nor *granted*, in virtue of any *delegated* authority, but under the *general power* of a court of chancery to *protect a right*, precisely as *patent rights* are protected by injunctions.

Gibbons *v.* Ogden.

II. Let us suppose, for a moment, that this *is a statutory* injunction, yet it does not *satisfy* our act. In order to, do that, the statute of New York should authorize an injunction *co-extensive* with the waters between the ancient shores, whereas it does not pretend to extend beyond the territory of that state.

1. *The order* for the injunction of October, 1818, although laid to be at the instance of this defendant, cannot satisfy our law, because it is *confined* to the territory of New York, and does not extend over the intermediate waters, neither can it be extended by any statute before the court, or in existence.

2. *The order* of October, 1819, cannot justify our laws, because not authorized, in any possible way, by the statutes which have been relied upon ; besides, it is not laid this last *order was made at the instance of this defendant,* or that he was plaintiff therein. It extends over the whole bay of New York, and was made, on a motion to dissolve the injunction, on behalf of Mr. Gibbons, who, in his answer, had set forth these waters, as being in the state of New York.

V. Cause of demurrer. For that the plaintiff has impleaded this defendant, on account of a transaction in the state of New York, done under the *lex loci* of that state, and in pursuance and execution of a decree of the Court of Chancery there, in a suit between the parties in the present action.

[See the case of *Livingston & Gibbons,* for the argument on this point. *Ante* 287.]

VI. Cause of demurrer. For that the ground of action is certain statutes, records, and judicial proceedings in the state of New York, and that they are not set forth with sufficient certainty and precision, so as to enable a defendant to plead thereto in a proper manner, and as by law he is entitled.

In order to comply with the provisions of the statute of New Jersey, the plaintiff must shew a decree of the Court of Chancery of New York; an injunction under that decree; and that such injunction was in virtue of, or under color of, some act of the legislature of that state. All these *are matters of record*, and being the foundation of the suit, the whole should be set forth with all that certainty which is requisite in pleading records.

1. As to these judicial proceedings: first, there is no averment of place; second, no specification of time; third, no specification of the parties; fourth, no specification of the person before whom proceedings were had, and so, also, no specification of the judgment which was pronounced.

And in regard to the statutes, which are also matters of record, there is no averment of date, none of place, nor any specification of contents; so that this court cannot perceive, from this declaration, whether this injunction or restraint was by any order of the Court of Chancery of New York; whether it was in virtue of any act of the legislature of New York; or whether it covered the intermediate waters; neither can this defendant plead thereto, that there were no such records as are set forth in the declaration; now all these are matters of law, to be settled by the court, which cannot be done, unless they are laid before the court.

2. The rule is, where a record is the ground of a suit, that it ought to be *certainly* and truly alleged. In pleading a record, it is not sufficient to say, in virtue of such a by-law, or such a writ. 1 *Chit* 240. There may be a plea of *nul tiel record* to a suit brought on a judgment in another state. And if there may be a plea of *nul tiel record*, the record ought to be set out, that I may know how to plead. 1 *Chit.* 537; 5 *East.* 473.

*Wood*, in reply. In answer, if we have not been able to steer through this Scylla and Charybdis of technical nicety, it is not for want of attention. As to the first point, we

have averred, that the act complained of happened after the passing of the statute. The time laid in the declaration is after the 1st of April, 1820, and with a *continuando ;* and if the fact is not shewn to have happened since the act went into operation, the defendant may avail himself of it at the trial. If time is material, and you make the allegation of the act after the passage of the statute, it is sufficient. If this strictness ever was required, it is not required at this day, under the more liberal rules of pleading adopted by modern times. But it never was necessary to aver, that the statute was passed before the cause of action accrued. 1 *Saund.* 309, *n.* 3, 5. This rule grew out of the particular statute of 5 Elizabeth, as to apprentices ; but there is no such rule upon a general public act, of which the court are bound to take notice. We allege, that this restraining took place between the 2d day of April, 1820, and the time of the commencement of this suit; and, therefore, the time is material, and we must confine ourselves within that period.

2. It is said, that the cause of action is local, and the venue is not laid in the county where the cause of action arose. Admitting the cause is local, yet if there is no particular county in which the act happened, you may lay your venue in any county you choose. 1 *Chit.* 268, 273. Here it does not appear, that the cause of action arose in Bergen, or in any county within the state; but this is a transitory action. The waters of the bay of New York are a great public highway, over which Thomas Gibbons has a right to pass, and being prevented is an injury to his person and personal property.

3. It is said, that part of ground for which this action is brought lies in the state of New York, and that he is not liable to answer, in this state, for any act in New York. Although our territorial limits extend only to the middle of the river, yet the right of navigation is common over all the waters lying between the two states, and an injury to the rights of a citizen of New Jersey, on any of those waters,

must be answered for here. But if it was a local action, yet, upon the ground, that he can get no redress any where else, this court would have jurisdiction, and would give redress. This action does not concern real property, but is a transitory action, and you may bring the action wherever you can find the defendant.

As to the fourth and sixth reasons of the gentleman, they are substantially the same, *viz :* that the statutes of New York are not set out, but the substance of this interlocutory order is set out, and the acts are set out, so far as to identify them, and it is not necessary to set them out at length, because it will lead to prolixity in pleading ; for the rule is, that when a subject comprehends a multiplicity of matter there, in order to avoid prolixity, the law allows general pleading. *Crips* v. *Benton,* 5 *Bac. Abr.* 339 ; 1 *Chit. Plead.* 240 ; 2 *Saund.* 411, *note* 4.

4. But these laws and these proceedings in the state of New York, are not the foundation of this action. This action is grounded on our own statute, and the statute and proceedings of New York are mere inducement, and particularity is not required in setting out matters of inducement. 5 *Com. Dig. title Plead. C.* 31 ; 1 *Chit. Plead.* 293.

It is said, that if these laws had been set out the defendant would have had a right to plead *nul tiel* record, but mere matter of inducement is not traversable. Suppose an action brought against a sheriff for an escape, a party could not plead *nul tiel* record to the writ, because it is mere matter of inducement. Besides, this is an action on the case, and the same particularity in pleading is not required in this action. Again, as to the suit in chancery and the order, the same particularity is used in this declaration as upon a suit on a judgment. But, even where the judgment was the foundation of the action, courts have relaxed in the nicety and strictness of pleading ; for instance, in setting forth the proceedings of an inferior court, after giving it jurisdiction, it is sufficient to say, *such proceedings were thereupon had,*

that such an act was done by the court. 1 *John.* 291; 2 *Ib.* 363. Upon what ground is it that the statutes of New York should be set out; it could be of no use, except to shew whether the injunction issued under or by virtue of those statutes; but if they were set out it could not judicially appear that the injunction issued under them; we should have to make an averment of that fact afterwards. It is mere matter of averment.

Again, the act of the legislature says, if the injunction issued under color of the laws of New York, and if you set out the acts, it could not appear that they were issued under color of those acts.

The fifth reason is, because the plaintiff complains of an act done in New York, &c. [See the argument on this point in the preceding case of *Livingston & Gibbons.*]

But it is said, that the injunction issued in New York must be a statutory injunction. This question cannot come up under this demurrer, for we do allege in the declaration, that it is issued under color of these laws, and on a demurrer the allegations in the declaration are to be taken as true. But if these laws were judicially before the court, they would be sufficient to support the allegations of this bill. This injunction, it is said, did not issue by virtue of the laws of New York. I contend it does; because without these laws it could not have been issued. It is said, the state of New York never passed any act asserting these claims to our waters; but if the acts do not claim, the chancellor, by the construction he gives them, does make these acts of New York claim and cover these waters. It is the first order, of which we complain, and not the second. If the first order issued under the sanction of Colonel Ogden, it is sufficient for our purpose, and it is not material as to the second.

KIRKPATRICK, C. J. This is an action on the case, founded upon what is commonly called the steamboat law,

for enjoining and restraining the plaintiff from navigating the waters between the state of New Jersey and the state of New York with his steamboat. To the declaration of the plaintiff, the defendant has demurred specially, and for causes of demurrer. has assigned, in substance, the six following:

1. That it is not averred in the declaration, that the cause of action accrued after the passing of the act.

2. That the cause of action is in its nature local; that the declaration lays the venue in the county of Essex, and yet has shewn no cause of action arising there, nor made any sufficient averment to maintain his suit there.

3. That the declaration charges the defendant with acts done in the waters lying between the ancient shores of the two states, which waters are partly within the territory of New York, and partly within the territory of New Jersey, without averring or setting forth any act done in either of the said states in particular, so that the defendant cannot plead with safety.

4. That the injunction and order of the Court of Chancery of New York, stated in the declaration, respect the waters of the bay of New York only; that these waters do not lie between the ancient shores of the two states, and therefore are not within the view of the act upon which the action is founded.

5. That the declaration, as the only ground of action, charges the defendant with certain acts and things done in the state of New York, by virtue and in pursuance of certain orders, decrees, and judicial proceedings of the Court of Chancery there, upon a subject matter within its cognizance and jurisdiction, and that, therefore, the defendant hath no need, nor can he be put, to answer.

6. That the action is grounded upon certain facts, records, and judicial proceedings of the state of New York, and yet, that the declaration does not set them forth with such certainty and precision as that the defendant can safely plead.

Gibbons *v.* Ogden.

All these causes, except the fifth, go to matters of form, and to me appear to be insufficient to bar the plaintiff: for *First.* The act upon which the suit is founded is a public act, and the court will take notice of it, and of the time it was passed, without recital or averment. It is, therefore, sufficient that the enjoining is *laid* to be after it went into operation, without specially averring that it was so. *Secondly.* The action is not in its nature local, but transitory. Even a direct act of violence done in the state of New York, if it does not respect the realty, may be laid here. The case of *Flatt et al.* v. *Abrahams and Roff*, 2 *South· Rep.* 544, was trespass for running foul of the plaintiff's schooner and sinking her near Governor's Island, in the bay of New York; and yet the venue was laid at Newark, in the county of Essex, and the action was maintained here, and tried upon that venue. It is a general principle, that if a thing be done out of the realm which is ground of a personal action, the action may be brought in any county within the realm; and if, from the nature of the transaction, or the date of the contract, it becomes necessary to state the place where it was done truly, it shall be so stated, but then, in order to give a venue, that place shall be alleged to be at some place certain in the county where the venue is laid; and this allegation is not traversable; it is a fiction introduced for the furtherance of justice, manifestly not true in itself, but necessary as matter of form. This principle is established in the case of *Roberts* v. *Harnaze, Salk.* 660, and in the case of *Mostyn* v. *Fabrigus, Cowp.* 180. Besides, there is no need of fiction in this case, for the plaintiff is alleged to be a citizen of New Jersey, residing at Elizabeth-town, in the county of Essex. The restraint was put upon him there; the damage was sustained by him there; and the means or instrument of restraint being brought from the state of New York does not alter the case. The venue, therefore, without any fiction, must have been there. *Thirdly.* The act upon which this action is founded

goes upon the principle, that we have a right to navigate all the waters lying between the ancient shores of these two states; and it is expressly averred in the declaration, that the waters of the bay of New York, which the plaintiff was restrained from navigating, do lie between those ancient shores. In an action upon this act, therefore, it cannot be necessary for the plaintiff to go further, and to state what part of these waters is claimed to be within the territory and jurisdiction of the state of New Jersey, and what within the territory and jurisdiction of the state of New York; for, in the contemplation of the act, that is an immaterial circumstance. If it was material for the defendant to bring up that matter, or if he would found a defence upon it, he ought to have done so by pleading. *Fourthly.* Though it should be true, that the waters of the bay of New York are no part of the waters lying between the ancient shores of the two states, and that, therefore, the enjoining and restraining of the plaintiff from navigating those waters, are not within the words of the act, yet inasmuch as they are averred in the declaration, to lie between these shores, the question becomes a matter of fact, to be tried by a jury, and cannot be determined by the court upon demurrer. Until that matter be tried, therefore, it must be taken upon the strength of the averment in the declaration, that the defendant did enjoin and restrain the plaintiff from navigating the waters described in the act, that is to say, the waters lying between the ancient shores of these two states. And as to the *sixth* cause, it is to be observed, that the restraint is the injury complained of, and that the proceedings of the Court of Chancery in New York are but the inducement, and therefore not necessary to be set out specifically; and that even if that were necessary, it is sufficiently done. It certainly could not be incumbent on the plaintiff to recite them *verbatim*, or to give the tenor of them. This would be contrary to all the rules of pleading. As to these causes, therefore, which go to mere matters of form, I think, as I

before said, that they are not sufficient to bar the plaintiff. But, as to the *fifth* cause. Though from the reasons which I have stated in the case of *Livingston* v. *Gibbons*, in this term, I should incline to the opinion, that no action can be maintained upon the case stated in this declaration; yet from a real diffidence in my own judgment upon this question, especially when set in opposition to that of the chancellor, and from a full persuasion that it will be better for both parties to let the judgment be entered for the plaintiff here, and the case be carried up, by appeal, to a superior judicatory, to which great constitutional questions of this kind ultimately belong, and which have the power of putting them finally to rest, I have thought it safest and best, upon the whole, to say, that the demurrer must be overruled.

FORD, J. concurred.

ROSSELL, J. dissented.

Demurrer overruled.